UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAN HALPERIN, on behalf of himself and others similarly situated, | ) )  ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, | |
| vs. | |
| INTERNATIONAL WEB SERVICES, LLC, and AFFLUENT ADS, LLC, | |
| Defendants. | |

13 C 8573

Judge Feinerman

**MEMORANDUM OPINION AND ORDER**

According to Dan Halperin, Text Enhance is a malicious software program that, having surreptitiously been installed on his computer, "enhances" text displayed in his web browser by selectively underlining words and generating unwanted pop-up ads when his cursor hovers over the underlined text. Doc. 2 at ¶ 25. Halperin brought this putative class action against Affluent Ads, LLC, and International Web Services, LLC, the creator and distributor of Text Enhance, alleging violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; the Electronic Communications Privacy Act's anti-wiretap provisions ("Wiretap Act"), 18 U.S.C. §§ 2510 *et seq.*; the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*; and the Illinois Computer Tampering Act ("ICTA"), 720 ILCS 5/17-50 *et seq*. Doc. 2. Halperin seeks to certify a nationwide class for the federal claims and an Illinois-only class for the state law claims. *Id.* at ¶¶ 37-38. Defendants moved to dismiss the suit pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 19. In an oral ruling, the court denied the motion insofar as it argued that an offer of judgment served by Defendants on Halperin rendered his claims moot. Doc. 45. In this opinion, the court denies Defendants'

1

Rule 12(b)(1) motion to dismiss for lack of Article III standing and grants Defendants' Rule 12(b)(6) motion for failure to state a claim, though Halperin will be given a chance to replead. And because the complaint is dismissed, Defendants' Rule 12(f) motion to strike the complaint's class allegations, Doc. 29, is denied without prejudice as moot.

**Background**

Defendants' Rule 12(b)(1) motion to dismiss for lack of Article III standing accepts as true the facts alleged in the complaint, Doc. 28 at 7 n.1, so the challenge to Halperin's standing is facial rather than factual. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). On a facial challenge to subject matter jurisdiction, as on a Rule 12(b)(6) motion to dismiss, the court must accept the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the plaintiff's favor, but not the complaint's legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Apex Digital*, 572 F.3d at 443-44; *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Halperin's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The facts are set forth as favorably to Halperin as permitted by these materials. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Affluent Ads created a software program called "Text Enhance," which International Web Services then distributed. Doc. 2 at ¶¶ 19-20. Without Halperin's knowledge or consent, Defendants somehow installed Text Enhance on his computer. *Id.* at ¶ 25. When Halperin visits a website using his computer, "Text Enhance automatically scans the text of the webpage" for

certain keywords, and for each keyword found, it "turns the [word] blue and underlines it." *Ibid.* If Halperin's cursor hovers over an underlined word, "an advertisement will appear over the website." *Ibid.* For example, in the image below (taken from Halperin's complaint), Text Enhance has underlined the word "bet," and when Halperin's cursor hovers over that word, a pop-up advertisement entitled "Play Free Slots" appears. *Id.* at ¶ 25 Image 1.



Were Halperin to click on the pop-up ad, his browser would be directed to the website "Youplaytime.net," which is not affiliated with the website ("April Dammann Website") he had been viewing. *Id.* at ¶ 25.

Halperin alleges that "Text Enhance causes computers to slow down, takes up bandwidth over an Internet connection, uses up memory, utilizes pixels and screen space on monitors, causes the loss of data, and otherwise frustrates the customary and intended uses of computers." *Id.* at ¶ 30. As a result, he must upgrade his computer or internet connection speed, *id.* at ¶ 31, or "spend valuable time and money to investigate … how the malware can be removed," *id.* at ¶ 33.

**Discussion**

As noted above, Defendants seek dismissal under Rule 12(b)(1) for lack of Article III standing and under Rule 12(b)(6) for failure to state a claim. Because standing is jurisdictional, the court must consider that issue before reaching the merits. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 92 (1998); *Hinrichs v. Speaker of House of Representatives of Ind. Gen. Assembly*, 506 F.3d 584, 590 (7th Cir. 2007).

**I.      Rule 12(b)(1) Motion – Article III Standing**

Defendants contend that Halperin lacks Article III standing because he has alleged only "abstract injuries to unidentified 'consumers,'" Doc. 28 at 12, and not a concrete injury to himself. To establish Article III standing, Halperin must allege injury-in-fact, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). As for the injury requirement, "named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *see also Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009) ("*Before* a class is certified … the named plaintiff must have standing, because at that stage no one else has a legally protected interest in maintaining the suit."); 1 William B. Rubenstein, *Newberg on Class Actions* § 2:4, p. 65 (5th ed. 2011) ("The class representative's Article III standing, like any individual's standing to sue, is measured by the test found in the Supreme Court's decision in *Lujan v. Defenders of Wildlife*."). That said, "[t]he standing test can be easily met in most types of class suits so long as the class representative has incurred actual injury." Rubenstein, *supra*, at § 2:4, p. 66.

4

Halperin has alleged a sufficiently personal injury to support his standing to bring this suit. The complaint alleges that Halperin's own computer was "infected" with Text Enhance without his consent, Doc. 2 at ¶¶ 26, 28, and that as a result he could not use his computer "for [its] original intended purposes," *id.* at ¶ 29, because "Text Enhance causes computers to slow down, takes up bandwidth over an Internet connection, uses up memory, utilizes pixels and screen space on monitors, causes the loss of data, and otherwise frustrates the customary and intended uses of computers," *id.* at ¶ 30. The allegations regarding Text Enhance may or may not be true, but Halperin has alleged enough of an injury to support standing. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1012 (1992) (holding that the plaintiff had properly alleged Article III standing where he complained of "constraints placed on the use of his parcels"); *Johnson v. Allsteel, Inc.*, 259 F.3d 885, 887-88 (7th Cir. 2001) (holding that an allegation that the defendant "increased its discretion as [ERISA] plan administrator" was sufficient to confer Article III standing because it "decreased the value of [plaintiff's] bargained-for-entitlements," namely, "the right to have a plan administered with a limited amount of discretion"); *Family & Children's Ctr., Inc. v. Sch. City of Mishawaka*, 13 F.3d 1052, 1058 (7th Cir. 1994) ("even a minor or non-economic injury will satisfy the strictures of Article III, though purely psychological harm will not"); *see generally Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal quotation marks and alteration omitted).

Defendants retort that any possible injury to Halperin is *de minimis*. Doc. 28 at 13. But the magnitude of Halperin's injury is a merits question—pertinent to damages and, as shown below, to liability for the CFAA claim—and not one of Article III standing, which requires only

an injury, no matter how small. *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008) (noting that even an injury worth "only a dollar or two" would be sufficient to support Article III standing); *Markadonatos v. Vill. of Woodridge*, 760 F.3d 545, 2014 WL 3566203, at *8 (7th Cir. 2014) (en banc) (opinion of Posner, J.) (contrasting a lack of injury to support Article III standing with a lack of cognizable injury under the *de minimis non curat lex* doctrine). Halperin has alleged enough to establish Article III standing.

## II. Rule 12(b)(6) – Halperin's Federal Claims

### A. CFAA Claim

To bring a civil claim under the CFAA, Halperin must plausibly allege that Defendants caused "a loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value." 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), 1030(g); *see WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 207 & n.1 (4th Cir. 2012); *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009); *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC.*, 428 F.3d 504, 512-13 (3d Cir. 2005). The CFAA defines "loss" to include "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense." 18 U.S.C. § 1030(e)(11). With exceptions not pertinent here, however, a CFAA plaintiff's damages "are limited to economic damages." § 1030(g). "When an individual or firm's money or property are impaired in value, or money or property is lost, or money must be spent to restore or maintain some aspect of a business affected by a violation, those are 'economic damages.'" *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935 (9th Cir. 2004).

Defendants argue that Halperin has not alleged that he personally suffered at least $5,000 in economic damages, and that he may not aggregate the economic damages of the absent class

members to meet the $5,000 minimum because "such aggregation is allowed only if the damage arose from a single act." Doc. 28 at 10. Halperin does *not* argue that his economic damages alone satisfy the $5,000 threshold, and he also concedes that the "single act" rule applies here. Doc. 37 at 16. But Halperin contends that Defendants' "sen[ding] the Text Enhance software out into the web" qualifies as that single act, and therefore that the putative class members' damages may be aggregated to satisfy the $5,000 threshold. *Ibid*.

Defendants are right that, at least under the facts alleged in Halperin's complaint, the putative class members' damages may not be aggregated to reach $5,000 because the CFAA does not allow aggregating damages suffered by absent class members resulting from disparate acts. The statutorily prohibited act is "intentionally access[ing] a protected computer without authorization." 18 U.S.C. § 1030(a)(5)(B). Sending the Text Enhance software "out into the web"—whatever that means—is not "access[ing] a protected computer without authorization." The "access" prohibited by § 1030(a)(5)(B) occurs only when a user downloads the software, presumably from Defendants' servers, to his or her own computer. Any allegation that all class members downloaded Text Enhance at the same time or via a single download would be implausible, and Halperin sensibly does not so allege. Doc. 2 at ¶ 22 (alleging only that "Text Enhance hit thousands of consumers' computers and continues to afflict them to this day," without specifying how or when the various computers were "hit"); *id.* at ¶ 26 (alleging only that class members' "computers were infected with Text Enhance," without specifying how or when); *id.* at ¶ 41 (alleging only that "there are thousands of consumers … who have been damaged by Defendants' wrongful conduct," without specifying how or when their respective downloads occurred). Accordingly, each class member's (unwitting) download would be a

different culpable act under the statute. And because Halperin concedes that the "single act" rule applies, he therefore cannot aggregate his claim with those of the absent class members.

The conclusion is confirmed by the fact that when Congress wants the claims of absent class members to be aggregated, it says so explicitly. *See* 28 U.S.C. § 1332(d)(2) (providing for federal "jurisdiction of any civil action in which the matter in controversy exceeds … $5,000,000 … *and is a class action*") (emphasis added), § 1332(d)(6) ("the claims of the individual class members shall be aggregated"). Absent such explicit language, the anti-aggregation rule requires at least one plaintiff in a class action, usually the named plaintiff, to meet the required threshold. *See Snyder v. Harris*, 394 U.S. 332, 335 (1969); *Travelers Property Casualty v. Good*, 689 F.3d 714, 717-22 (7th Cir. 2012) (citing cases); 14AA Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 3704, pp. 575-76 (4th ed. 2011) (noting "the long-standing and seemingly well-settled rule … that the claims of several plaintiffs cannot be aggregated for purposes of determining the amount in controversy"). The CFAA does not mention class actions at all in its civil remedy provision, *see* 18 U.S.C. § 1030(g), which strongly suggests that, under the anti-aggregation rule, the economic damages claims of absent class members may not be aggregated.

Further confirmation arrives from the fact that the CFAA liability provision containing the $5,000 minimum, 18 U.S.C. § 1030(c)(4)(A)(i)(I), is a substantive provision of law, and in fact is an element of the crime. Absent a clear statutory indication to the contrary, to allow aggregation of absent class members' claims from disparate instances of "access," 18 U.S.C. § 1030(a)(5)(B), would effectively allow a civil procedural device, Federal Rule of Civil Procedure 23, to "abridge, modify, or enlarge a[] substantive right," in violation of the Rules Enabling Act, 28 U.S.C. § 2072(b). In *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins.*

*Co.*, 559 U.S. 393 (2010), the Supreme Court held that Rule 23 did not violate the Rules Enabling Act because "[a] class action, no less than traditional joinder (of which it is a species), merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits"; it does not "change plaintiffs' separate entitlements to relief." *Id.* at 408. By the same token, an interpretation of Rule 23 that *does* "change plaintiffs' separate entitlements to relief," for better or worse, *would* violate the Rules Enabling Act. Yet that is precisely what would result were Halperin allowed to aggregate his claim with those of absent class members— for without aggregation, some of them would not have a cause of action under the statute, because not all of them could meet the $5,000 minimum. Unlike in *Shady Grove*, where "[e]ach of the 1,000-plus members of the putative class could … [have] br[ought] a freestanding suit asserting his individual claim," *ibid.*, here not all—and maybe even none—of the putative class members could bring a freestanding suit absent the aggregation proposed by Halperin.

Halperin contends that disallowing aggregation would render the phrase "loss to 1 or more persons" in § 1030(c)(4)(A)(i)(I) a nullity. Not so. Economic damages to multiple victims could still be aggregated as long as they were the result of a single act—for example, the damages suffered by all family members who share an infected computer, or by all customers with accounts stored on an infected server, or by everyone who uses an infected public kiosk terminal, could be aggregated. One can even envision a single act infecting multiple computers at once, such as releasing a computer worm; in that case, the damages suffered by everyone with an infected computer might possibly be aggregated. But under the allegations of Halperin's complaint, a single act is not responsible for the injuries to the putative class. Halperin does not allege that Defendants performed some action that caused the simultaneous or near-simultaneous or rapidly spreading infection of all of the class members' respective computers. Instead, the

9

proposed class includes "[a]ll individuals in the United States [(Illinois, for the state-law claims)] whose computers have been infected with … Text Enhance," Doc. 3 at ¶ 1, no matter how or when the infection occurred. He therefore has not alleged that his and the absent class members' injuries arose from a single act.

For these reasons, Halperin's CFAA claim is dismissed.

B.   **Wiretap Act Claim**

As for the Wiretap Act claim, Defendants argue that Halperin has failed to allege that they "intercept[ed]" any "wire, oral, or electronic communication," 18 U.S.C. § 2520(a), without the consent of at least one party to the communication, *see* 18 U.S.C. § 2511(d) ("It shall not be unlawful under this chapter … to intercept a wire, oral, or electronic communication … where one of the parties to the communication has given prior consent[.]"). The Wiretap Act defines "intercept" as "the aural or other *acquisition* of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4) (emphasis added). Halperin argues that when he "typed a website into his Web browser he intended to send 'data' from his computer to the server of a third party—not Defendants," Doc. 37 at 18, and that this data was "intercepted by Defendants' malware," *id.* at 19. Defendants respond that they never acquired, and therefore could not have "intercept[ed]," such communications. Doc. 28 at 18-19; Doc. 38 at 19-20. Rather, Defendants say that because "Text Enhance operates exclusively on the user's machine, reading text that resides in the user's browser," Doc. 38 at 19, they have not "acqui[red]" the contents of any communication of Halperin's contemporaneously with the transmission of those contents, Doc. 28 at 19.

Defendants' argument is based in part on the statute's definition of "communication": Section 2510(1) defines "wire communication" as "any aural *transfer* made … by the aid of

wire, cable, or other like connection," and § 2510(12) defines "electronic communication" as "any *transfer* of signs, signals, [etc.] … by a wire, radio, electromagnetic, photoelectronic or photooptical system." 18 U.S.C. §§ 2510(1), (12) (emphases added). "Transfer" implies some sort of transient event; and so to "intercept" a communication, the argument goes, the "acquisition" must be contemporaneous with the "transfer." The Seventh Circuit has never explicitly adopted this reading of the Wiretap Act, though it did note in *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010), that "[s]everal circuits have said that, to violate § 2511, an interception must be 'contemporaneous' with the communication." *Id*. at 705-06 (citing *Fraser v. Nationwide Mutual Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003), *United States v. Steiger*, 318 F.3d 1039, 1047 (11th Cir. 2003), *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002), and *Steve Jackson Games, Inc. v. Secret Service*, 36 F.3d 457 (5th Cir. 1994)). *Szymuszkiewicz* did not need to reach that issue, having held that the defendant's auto-forwarding his supervisor's emails to himself violated the Wiretap Act because "if both [the defendant] and [his boss] were sitting at their computers at the same time, they would have received each message with no more than an eyeblink in between. That's contemporaneous by any standard." *Id.* at 706.

      This court need not predict how the Seventh Circuit would resolve the contemporaneity issue, however, because under the complaint's well-pleaded factual allegations, Defendants never "acqui[red]" the contents of Halperin's electronic communications, as required to maintain a private action under the Wiretap Act. *See* 18 U.S.C. §§ 2510(4), 2511(1)(a), 2520(a). According to the complaint, Text Enhance resides locally on Halperin's computer and generates pop-up ads in his browser. Doc. 2 at ¶¶ 24-25. Halperin does not allege that Text Enhance somehow forwards to Defendants the contents of his communication with a third-party website

(such as the "April Dammann Website" in the image above). At most, Defendants may be notified (and paid, according to the complaint) if Halperin clicks on the advertising link—but that would be a communication with the *advertiser* (for example, "Youplaytime.net"), who has presumably consented to Defendants' being notified, which as noted above negates liability under the statute. *See* 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful under this chapter … to intercept a wire, oral, or electronic communication … where one of the parties to the communication has given prior consent to such interception[.]"); *Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005) ("The statute provides some defenses, such as consent. Any one private participant's consent usually suffices."); *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 625 (7th Cir. 2000) ("18 U.S.C. § 2511(2)(d) exempts *from the operation of the entire chapter*, of which section 2518 is a part, consensual recordings such as made here") (internal quotation marks omitted).

True, Text Enhance itself scans the text of Halperin's communications (for example, the html file sent by a third-party website and then displayed by his web browser) in order to insert the advertising links. But Halperin does not allege that Text Enhance stores or transmits those contents beyond his local computer. That is significant. By way of analogy, courts have uniformly held that "keylogger" software, which records keystrokes made on a computer, does not violate the Wiretap Act. The Eleventh Circuit recently so held because "the signal or information captured from the keystrokes is not at that time being transmitted beyond the computer on which the keylogger is installed." *United States v. Barrington*, 648 F.3d 1178, 1202 (11th Cir. 2011). A district court recently adopted the reasoning of *Barrington* to reach the same conclusion, explaining that "the transmission of keystrokes exists internally on a computer. The relevant 'interception' acted on a system that operated solely between the keyboard and the local

computer, and captured a transmission that required no connection with interstate or foreign commerce to reach its destination." *Rene v. G.F. Fishers, Inc.*, 817 F. Supp. 2d 1090, 1094 (S.D. Ind. 2011); *see also United States v. Ropp*, 347 F. Supp. 2d 831, 838 (C.D. Cal. 2004) (holding that "although defendant engaged in a gross invasion of privacy by his installation of the KeyKatcher on Ms. Beck's computer, his conduct did not violate the Wiretap Act"); *United States v. Scarfo*, 180 F. Supp. 2d 572, 582 (D.N.J. 2001) (holding that a keystroke logger operating only when the modem was inactive did not violate the Wiretap Act). Text Enhance, too, "capture[s] a transmission that require[s] no connection" to the outside world, *Rene*, 817 F. Supp. 2d at 1094; rather, according to the complaint, it simply modifies the rendering of an html file within the web browser before the page is displayed on Halperin's screen, without recording or retransmitting that page's contents.

More compelling is that the court has been unable to find—and Halperin has not cited—any decision finding a potential Wiretap Act violation where the defendant did not actually *acquire* the contents of a communication, but instead, by means of a locally installed software program or device, simply modified—without recording or retransmitting—the contents of a communication. To the contrary, the case law appears to reject that proposition. *See Expert Bus. Sys., LLC v. BI4CE, Inc.*, 233 F. App'x 251, 253 (4th Cir. 2007) (rejecting a Wiretap Act claim where the defendant's software that was locally installed on the plaintiff's computers could access the plaintiff's "records and data," but where the defendant could not remotely access that data using the software).

In sum, given the statutory requirement of an "acquisition," 18 U.S.C. § 2510(4), Halperin has not stated a viable claim under the Wiretap Act, which seems to be a poor fit to address the kind of invasive and annoying tactics that Text Enhance is alleged to employ. (By

13

contrast, the CFAA might have been a good fit were it not for the $5,000 economic damages threshold.) It is, of course, possible that Text Enhance *does* record or retransmit to Defendants the contents of the webpages that Halperin visits, in which case Defendants would have "acqui[red]" those contents; and if so, Halperin might well have a valid Wiretap Act claim. *Cf. Noel v. Hall*, 568 F.3d 743, 750 (9th Cir. 2009) ("If A divulges a secret to B on the phone, her conversation is protected; if B is not at home and A leaves the same secret on the voicemail for B to retrieve later, that message is also protected. If C records B's voicemail …, C's act would constitute an interception."). Accordingly, because Halperin might consistent with Rule 11 be able to plead that fact or any other fact that would bring Defendants' conduct within the Wiretap Act's scope, the dismissal of the Wiretap Act claim is without prejudice and with leave to replead.

### III. State Law Claims

Having dismissed Halperin's federal claims, the court must decide whether it has jurisdiction to hear his state law claims. Halperin premises subject matter jurisdiction over the state law claims on 28 U.S.C. § 1367, the supplemental jurisdiction statute, and also on 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"). Doc. 2 at ¶¶ 4-5. Halperin does not invoke the regular diversity statute, 28 U.S.C. § 1332(a). Defendants do not contest subject matter jurisdiction, but a federal court has an "independent obligation to satisfy itself that federal subject matter jurisdiction exists." *Smith v. Am. Gen. Life & Acc. Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003); *accord St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 (1938).

Jurisdiction under CAFA requires not complete diversity, but only minimal diversity, which means that "any member of a class of plaintiffs is a citizen of a State different from any

defendant." 28 U.S.C. § 1332(d)(2)(A); *see Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 677 (7th Cir. 2006). Even then, the court "shall decline to exercise jurisdiction" if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B); *see Hart*, 457 F.3d at 677. Thus, because Halperin is an Illinois citizen, Doc. 2 at ¶ 8, and because the proposed Illinois-only class is likely to be dominated by Illinois citizens, *id*. at ¶ 38, CAFA jurisdiction likely would be lacking if Affluent Ads and International Web Services are both Illinois citizens.

The trouble is that the complaint does not properly plead the citizenship of either defendant. The complaint alleges that Affluent Ads "is a limited liability company organized in and existing under the laws of the State of New Jersey with its principal place of business located in Philadelphia County, Pennsylvania," and thus "is a citizen of the State of New Jersey and the State of Pennsylvania." Doc. 2 at ¶ 9. The complaint likewise alleges that International Web Services "is a limited liability company organized in and existing under the laws of the State of Delaware with its principal place of business located in Philadelphia County, Pennsylvania," and therefore "is a citizen of the State of New Jersey [he meant Delaware] and the State of Pennsylvania." *Id.* at ¶ 10.

These allegations are insufficient to establish Defendants' citizenship. Long-settled precedent holds that the citizenship of an LLC, unlike the citizenship of a corporation, *see* 28 U.S.C. § 1332(c)(1), is not the State under whose laws the LLC is organized and the State where the LLC's principal place of business is located. Rather, an LLC is a citizen of every State of which any of the LLC's members is a citizen. *See*, *e.g.*, *IP of A West 86th Street 1, LLC v. Morgan Stanley Mortg. Capital Holdings, LLC*, 686 F.3d 361, 363 (7th Cir. 2012); *Copeland v.*

*Penske Logistics LLC*, 675 F.3d 1040, 1043 (7th Cir. 2012); *Muscarello v. Ogle Cnty. Bd. of Commr's*, 610 F.3d 416, 424 (7th Cir. 2010); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009); *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007); *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992 (7th Cir. 2007); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 267 (7th Cir. 2006); *Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 881 n.1 (7th Cir. 2004); *Belleville Catering Co. v. Champaign Market Place, LLC*, 350 F.3d 691, 692 (7th Cir. 2003); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). Thus, to properly allege the citizenship of Defendants, Halperin must allege the identity and citizenship of each member of Affluent Ads and each member of International Web Services. *See Thomas*, 487 F.3d at 534. For this reason alone, Halperin has failed to plead CAFA jurisdiction. In addition, Halperin makes only a conclusory allegation that the amount in controversy exceeds $5,000,000, Doc. 2 at ¶ 5, and fails to explain why this is so; this defect, too, defeats CAFA jurisdiction. *See Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 764 (7th Cir. 2011) (requiring a CAFA plaintiff to "provide[] plausible, good-faith estimates demonstrating how the stakes exceed $5,000,000"); *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (holding that "the proponent of federal jurisdiction [must] explain[] plausibly how the stakes exceed $5 million").

The supplemental jurisdiction statute, 28 U.S.C. § 1367(a), grants this court jurisdiction over Halperin's state law claims, which "derive from a common nucleus of operative fact" as his federal claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). But with the federal claims dismissed (at least for now), the court declines to exercise supplemental jurisdiction over the state law claims. Section 1367(c)(3) of Title 28 provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.

§ 1367(c)(3). "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pend[e]nt state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). This general rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Ibid*.

None of the exceptions apply here. Illinois law gives Halperin one year to refile his state law claims in state court following a jurisdictional dismissal from federal court. *See* 735 ILCS 5/13-217; *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008). Substantial federal judicial resources have not yet been committed to the state law claims. (That said, the court notes that Halperin may very well have a viable claim under the ITCA.) And it is not clearly apparent how the state law claims should be decided. It follows that relinquishing jurisdiction over the state law claims is the appropriate course under § 1367(c)(3). *See RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479-80 (7th Cir. 2012); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994).

**Conclusion**

Defendants' Rule 12(b)(1) motion for lack of Article III standing is denied, but Halperin's federal claims are dismissed under Rule 12(b)(6) and his state law claims are dismissed under 28 U.S.C. § 1367(c). The dismissal is without prejudice. Although there is reason to doubt that Halperin could ever adequately plead his CFAA and Wiretap Act claims, the court will give him one opportunity to try if he would like. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("As a general matter, Rule 15 ordinarily requires that leave to amend be granted at least once when there is a potentially curable problem with the complaint or

other pleading."). The dismissal of the state law claims under § 1367(c)(3), by definition, is without prejudice as well. *See In re IFC Credit Corp.*, 663 F.3d 315, 320 (7th Cir. 2011) ("[D]ismissal for want of jurisdiction, not being an adjudication on the merits, is without prejudice[.]"). Because it is possible that Halperin will be unable to adequately plead his federal claims, he should take care (if possible) to properly plead CAFA or § 1332(a) jurisdiction if he wants to ensure a federal forum for his suit. Halperin has leave until October 21, 2014, to file an amended complaint. Because the complaint has been dismissed in its entirety, Defendants' Rule 12(f) motion to strike the complaint's class allegations is denied without prejudice as moot.

September 30, 2014                                  _____
                                                     United States District Judge