UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAN HALPERIN, on behalf of himself and others similarly situated, | ) ) ) ) 13 C 8573 |
| Plaintiff, | ) ) |
| | ) Judge Feinerman |
| vs. | ) ) |
| INTERNATIONAL WEB SERVICES, LLC, and AFFLUENT ADS, LLC, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Dan Halperin brings this putative class action against Affluent Ads, LLC, and International Web Services, LLC, the creator and distributor of *I Want This!*, which Halperin claims is a malicious software program that, having surreptitiously been installed on his computer, selectively underlines words displayed in his web browser and generates unwanted pop-up ads when his cursor hovers over the underlined text. Doc. 85 at ¶ 31. The original complaint alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, the Illinois Computer Tampering Act ("ICTA"), 720 ILCS 5/17-50 *et seq.*, and two federal statutes, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Electronic Communications Privacy Act's anti-wiretap provisions, 18 U.S.C. §§ 2510 *et seq.* Doc. 2. The court dismissed without prejudice the federal claims under Federal Rule of Civil Procedure 12(b)(6) and, as Halperin had not adequately pleaded the minimal diversity required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), exercised its discretion under 28 U.S.C. § 1367(c)(3) to relinquish supplemental jurisdiction over the state law claims. Docs. 76-77 (reported at __ F. Supp. 3d __, 2014 WL 4913528 (N.D. Ill.

Sept. 30, 2014)). The court did, however, give Halperin leave to file an amended complaint. 2014 WL 4913528, at *8.

The amended complaint does not replead the federal claims, but it again raises the ICFA and ICTA claims on behalf of himself and an Illinois-only class, and it also raises, on behalf of a multi-state class, consumer fraud claims under the laws of nine other States (California, Florida, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington) alleged to be similar to Illinois's. Doc. 85. Defendants have moved to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6), Doc. 90, and to strike its class allegations under Rule 12(f). Doc. 92. The motion to dismiss is granted, the motion to strike is denied without prejudice as moot, and Halperin is given one last chance to replead.

**Background**

On a Rule 12(b)(6) motion to dismiss, the court must accept the operative complaint's well-pleaded factual allegations, with all reasonable inferences drawn in Halperin's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014); *Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Halperin's briefs opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). The facts are set forth as favorably to Halperin as those materials permit. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014); *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Affluent Ads created a software program called *I Want This!*, which International Web Services then distributed. Doc. 85 at ¶¶ 26-27. Defendants somehow installed *I Want This!* on Halperin's computer. *Id.* at ¶ 35. A key component of *I Want This!* is called "Text Enhance." *Id*. at p. 7, n.11. When Halperin visits a website using his computer, Text Enhance "automatically scans the text of the webpage" for certain keywords, and for each keyword found, it "turns the [word] blue and underlines it." *Id.* at ¶ 31. If Halperin's cursor hovers over an underlined word, "an advertisement will appear over the website." *Ibid.* For example, in the image below (taken from the amended complaint), Text Enhance underlines the word "bet," and when Halperin's cursor hovers over that word, a pop-up advertisement entitled "Play Free Slots" appears:



*Id.* at ¶ 31, Image 1. Were Halperin to click on the pop-up ad, his browser would be directed to the website "Youplaytime.net," which is not affiliated with the website ("April Dammann Website") he had been viewing. *Id.* at ¶ 31.

Halperin alleges that "*I Want This!* causes computers to slow down, takes up bandwidth over an Internet connection, uses up memory, utilizes pixels and screen space on monitors, causes the loss of data, and otherwise frustrates the customary and intended uses of computers." *Id.* at ¶ 37. To remedy these problems, "consumers are required to purchase remedial products, such as internal hard-drives or random access memory," *id.* at ¶ 38, or "spend valuable time and money to investigate … how the malware can be removed," *id.* at ¶ 40. Nowhere, however, does the amended complaint allege that Halperin has actually spent any money to remedy the problems caused by *I Want This!* or to remove it from his computer.

## Discussion

### I. Subject Matter Jurisdiction

#### A. CAFA Jurisdiction

Halperin alleges subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Doc. 85 at ¶ 3. The amended complaint identifies Defendants as being citizens of New Jersey, Pennsylvania, and Canada, *id*. at ¶¶ 8-10, 12-16, and because he is a citizen of Illinois, Halperin has alleged the minimal diversity necessary under CAFA. *See* 28 U.S.C. § 1332(d)(2)(A). As for the amount in controversy, Halperin alleges that each class member faces roughly $150 of damages (an estimate of what a professional would charge to uninstall *I Want This!* from a user's computer, Doc. 85 at ¶ 4 & n.1), which means that if the class contains at least 33,334 people, CAFA's $5 million amount-in-controversy threshold is met. *See* 28 U.S.C. § 1332(d)(2).

The estimated population of the ten States in Halperin's proposed multi-state class is more than 135 million, *see* United States Census Bureau, "Population Estimates," www.census.gov/popest/data/state/totals/2014/index.html (visited June 4, 2015), requiring therefore around 0.025% (roughly 1 in 4,000) of the population in those States to be class members. That does not strike the court as "legally impossible," and if "the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000, the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 764 (7th Cir. 2011) (citation omitted).

**B.      Mootness**

Defendants argue that the case is moot because they made Halperin a $10,000 offer of judgment, more than enough to satisfy his demand. *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011). Because mootness would deprive the court of Article III jurisdiction, the court must address the issue before reaching the merits. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 92 (1998); *Hinrichs v. Speaker of House of Representatives of Ind. Gen. Assembly*, 506 F.3d 584, 590 (7th Cir. 2007).

Under settled Seventh Circuit precedent, an offer of judgment that gives a plaintiff everything he seeks will moot a case. *See Swanigan v. City of Chicago*, 775 F.3d 953, 960 (7th Cir. 2015) ("In this circuit an unaccepted Rule 68 offer that meets or exceeds all the relief the plaintiff has demanded eliminates any remaining case or controversy."); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1018 (7th Cir. 2014) ("[A]n unaccepted settlement offer can render the plaintiff's case moot *if it gives the plaintiff everything she requested*.") (quotation marks omitted); *Scott v. Westlake Servs. LLC*, 740 F.3d 1124, 1127 (7th Cir. 2014) ("Westlake was offering to pay only the amount it felt might be due. That was not enough to moot Scott's

case."); *Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999) ("[A]n offer, by giving the plaintiff the equivalent of a default judgment …, eliminates a legal dispute upon which federal jurisdiction can be based. You cannot persist in suing after you've won.") (citations omitted); *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991) ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake.") (citation omitted). The Supreme Court has left unanswered the question whether an *unaccepted* offer of judgment—like Defendants' offer to Halperin—can moot a case. *See Genesis Healthcare*, 133 S. Ct. at 1528-29 ("While the Courts of Appeals disagree whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot, we do not reach this question, or resolve the split, because the issue is not properly before us.") (footnote omitted). Although Justice Kagan's dissent in *Genesis Healthcare* forcefully answers "no," *see id*. at 1533 (dissenting opinion) ("[A]n unaccepted offer of judgment cannot moot a case. When a plaintiff rejects such an offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect. As every first-year law student learns, the recipient's rejection of an offer leaves the matter as if no offer had ever been made.") (internal quotation marks omitted), "yes" remains the answer in the Seventh Circuit, *see Scott*, 740 F.3d at 1126 n.1 ("The circuits are split on whether an unaccepted settlement offer can render a case moot. … The circuit split remains, but there are reasons to question our approach to the problem. See [*Genesis Healthcare*, 133 S. Ct.] at 1533-34 (Kagan, J., dissenting). Scott does not challenge our circuit's view, so we will continue to await a resolution of the split.").

6

That said, *Damasco* alerted putative class action plaintiffs—more precisely, their lawyers, *see Eubank v. Pella Corp.*, 753 F.3d 718, 719 (7th Cir. 2014) ("Class actions are the brainchildren of the lawyers who specialize in prosecuting such actions")—to a "simple solution to the buy-off problem …: Class-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs." *Damasco*, 662 F.3d at 896. Following this advice, Halperin filed simultaneously with his original complaint what is commonly called a "*Damasco* motion," Doc. 3, which, for administrative reasons and pursuant to this court's order, Doc. 68, he re-filed in September 2014, Doc. 69. Although the court dismissed his original complaint later that month, it expressly gave him leave to file an amended complaint without ruling on the pending class certification motion, which being a *Damasco* motion had not yet been briefed. Doc. 76.

Defendants point out that Halperin's *Damasco* motion seeks to certify a nationwide class on the two federal statutory causes of action in the original complaint, while the amended complaint alleges a multi-state class on various state law claims. Therefore, Defendants argue, there is no valid pending class certification motion relating to the amended complaint, and Halperin's failure to amend his *Damasco* motion to match his amended complaint rendered him vulnerable to being "picked off" by an offer of judgment. Doc. 91 at 11-14; *see Wrightsell v. Cook Cnty., Ill.*, 599 F.3d 781, 783 (7th Cir. 2010) ("Rule 68 offers … provide a means by which a defendant can pick off successive class representatives by offering more than the maximum value of the class representative's personal claim."); *McMahon*, 744 F.3d at 1018 ("*Damasco* reconfirmed our circuit's rule under which a defendant can render moot a possible class action by offering to settle for the full amount of the plaintiff's demands *before* the plaintiff files a

7

motion for class certification."). But Defendants' argument cannot be reconciled with the Seventh Circuit's teachings in *McMahon*, a case quite similar to this one:

> The district court … dismissed the class claims under Federal Rule of Civil Procedure 12(b)(6), not because of any problem with McMahon's ability to represent the class, but for substantive reasons. … [I]t expressly granted McMahon permission to amend and to allege narrower class claims. Two hours later on August 13, LVNV tried to pick off McMahon's individual claim with an offer of settlement. … McMahon did not accept the offer. Instead, he filed an amended complaint and an amended motion for class certification (in accordance with *Damasco*) on August 15, 2012.
>
> The district court took the position that the offer of settlement squeaked in under the wire, just before McMahon moved for class certification. But the motion on August 15 was an *amended* motion. McMahon already had brought his class claims before the district court, which had stated in so many words that the litigation was still ongoing when it gave him permission to amend. McMahon was diligent in pursuing his class claims: he filed his amended complaint and his new motion to certify the class just two days after the court gave him leave to do so. Had McMahon tried to appeal from the original denial of class certification, even assuming that LVNV's offer was comprehensive enough to moot his case, he would have been in exactly the same position as the *Roper* plaintiff. We conclude, therefore, that McMahon's decision to reject LVNV's settlement offer did not moot his interest in the case for purposes of his ability to serve as a class representative.

744 F.3d at 1018-19 (referring to *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980)).

As in *McMahon*, this court dismissed Halperin's nationwide class claims for "substantive reasons," and expressly gave him leave to amend the complaint, including to "allege narrower class claims"—which he did. And, as in *McMahon*, "the litigation was still ongoing when [this court] gave [Halperin] permission to amend." *Id*. at 1019. It follows that Halperin, like the plaintiff in *McMahon*, was not vulnerable to being picked off; his pending *Damasco* motion was enough to immunize him. True, the *McMahon* plaintiff, unlike Halperin, simultaneously filed both an amended complaint and an amended *Damasco* motion; but that is irrelevant, for the attempted pick-off in *McMahon* came *before* the amended complaint and *Damasco* motion were filed, when only the plaintiff's individual claims were pending. *McMahon*'s emphasizing that

8

the plaintiff's post-offer class certification motion was "an *amended* motion," *ibid*., makes clear that as long as a *Damasco* motion of some sort is pending and amenable to amendment, a plaintiff may not be picked off.

## II. The Merits

### A. ICFA Claim

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). "The elements of a claim under ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010); *see Robinson*, 775 N.E.2d at 960. In addition, the allegedly unfair or deceptive acts must have proximately caused the plaintiff to suffer actual damage. *See Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002) ("[A] private cause of action brought under section 10a(a) requires proof of 'actual damage.' Further, a private cause of action brought under section 10a(a) requires proof that the damage occurred 'as a result of' the deceptive act or practice. As noted previously, this language imposes a proximate causation requirement.") (citations omitted); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006) (same). As noted, the ICFA prohibits both "unfair" and "deceptive" acts or practices. 815 ILCS 505/2. Allegations of unfair acts under the ICFA are subject to Rule 8(a)'s general pleading standard, while allegations of deceptive acts "sound[] in fraud" and are therefore subject to Rule 9(b)'s heightened pleading standard. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011).

Halperin alleges only deceptive acts on Defendants' part. For example, the amended complaint alleges that Defendants' product "*misleads* [him] and the Illinois Class members into thinking that the websites they are visiting are affiliated with the Invasive Ads," that class members "rely on this *deception* by clicking" on the pop-up ads, and that "[t]his *deception* occurs while [class members] are using the internet for interstate commercial activities." Doc. 85 at ¶¶ 68-71 (emphases added). Although Halperin sprinkles the word "unfair" throughout the amended complaint, nowhere does he allege any unfairness separate and apart from the deception. Accordingly, his ICFA claim is limited to a deceptive practices claim, and is therefore subject to Rule 9(b). *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) ("Camasta claims that he was induced to purchase shirts from JAB by their 'fraudulent sales practices' that 'mislead,' 'misrepresent,' and 'defraud.' While Camasta adds language of unfairness, his allegations of 'unfair practice' are clearly premised upon the primary claim that JAB utilized a fraudulent sales technique. Simply adding language of 'unfairness' instead of 'misrepresentation' does not alter the fact that Camasta's allegations are entirely grounded in fraud under the ICFA."); *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 464 (7th Cir. 2014) (holding that because "[w]hat is deceptive is also unfair," a plaintiff who alleges only deceptive unfairness has not preserved a non-deceptive unfairness claim under the ICFA).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "A complaint alleging fraud must provide the who, what, when, where, and how." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotation marks and citation omitted). "A principal purpose of requiring that fraud be pleaded with particularity is,

10

by establishing this rather slight obstacle to loose charges of fraud, to protect individuals and businesses from privileged libel (privileged because it is contained in a pleading)." *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 594 (7th Cir. 2003). Accordingly, Rule 9(b) "requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 950 (7th Cir. 2013) (quotation marks omitted).

Halperin's ICFA allegations do not even rise to the level of plausibility, let alone Rule 9(b)'s particularity standard. The crux of the deceptive practices claim is that *I Want This!* "misleads [Halperin] and the Illinois Class members into thinking that the websites they are visiting are affiliated with the Invasive Ads." Doc. 85 at ¶ 68. Yet Halperin's own factual allegations bely this contention; screenshots reproduced in the amended complaint show that *I Want This!* generates pop-ups that clearly identify themselves as having been generated by "Text Enhance" (the relevant functional component of *I Want This!*), not the website that the user is visiting, and one screenshot identifies the new website itself. *Id.* at ¶ 31, Images 1 & 2. In other words, the pop-ups reveal the truth about their origins, which is the opposite of deceptive.

Image 1, for example, shows an ad with the URL "youplaytime.net." Although the complaint refers to *other* software that "hijacks" clicks and redirects users to websites that they did not expect to visit, Doc. 85 at ¶¶ 18, 23-25, Halperin does not allege that *I Want This!* does anything other than take the user to "youplaytime.net" if the user clicks on the ad. How could that be misleading? Pop-up ads are a fact of life on the internet, and no reasonable user of the internet could conclude that these pop-up ads are deceptive. Annoying, maybe—but not deceptive. *Cf. Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 893 N.E.2d 981, 996 (Ill. App. 2008) (holding that a practice is "deceptive" if it creates a "likelihood of confusion

or of misunderstanding" regarding whether the plaintiff sponsors, approves of, or is affiliated with the defendant's products).

Halperin alleges a second theory of deception: that *I Want This!* is difficult to uninstall or remove. Doc. 85 at ¶ 34. Yet his only attempt to satisfy Rule 9(b)'s particularity requirement regarding this theory is a citation to anonymous user comments on internet message boards. *Ibid*. Significantly, nowhere does Halperin allege that *he* found the program difficult to uninstall—or that he even attempted to uninstall it. As noted, Rule 9(b) "requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported." *Cincinnati Life Ins. Co.*, 722 F.3d at 950. If all Halperin can submit after conducting such an investigation (which the court assumes his experienced counsel responsibly undertook) is a list of anonymous and unsubstantiated user comments, his complaint badly flunks Rule 9(b). *See Camasta*, 761 F.3d at 738-39 ("While we allow Camasta some flexibility in the factual support required for his claim, … [and] [w]hile the facts of Camasta's complaint are viewed in his favor, simply stating that the sales practices are the same in two different states during two different time periods without any factual support is insufficient to satisfy the pleading requirement."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust*, 631 F.3d at 446 ("In order to survive the motion to dismiss phase, Pirelli needed some *firsthand information* to provide grounds to corroborate its suspicions.") (emphasis added).

Even putting aside Halperin's failure to adequately allege deception under Rule 9(b), it is questionable whether he has adequately alleged that he suffered "actual damage." "The actual damage element of a private ICFA action requires that the plaintiff suffer 'actual pecuniary loss.'" *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *see Cooney v. Chicago Pub. Sch.*, 943 N.E.2d 23, 31 (Ill. App. 2010) ("actual damages must arise from purely economic

injuries") (internal quotation marks omitted). Although Halperin alleges that it *could* cost up to $150 to remove *I Want This!* from his computer, he does not allege that he has *actually* paid $150, or even one cent, to remove it or to remedy the problems it caused. That he *might* suffer such a pecuniary loss in the future may be insufficient to state a claim for relief under the ICFA, which as noted requires alleging "actual pecuniary loss." *Kim*, 598 F.3d at 365; *see Camasta*, 761 F.3d at 739 ("Camasta asserts that he could have shopped around and found the same shirts for a lower price. Yet, he fails to assert that he did, in fact, shop around and find the same shirts for a lower price."); *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1054 (Ill. App. 2009) ("There is no cause of action under the Consumer Fraud Act when a plaintiff alleges only aggravation …."); *Yu v. Int'l Bus. Machines Corp.*, 732 N.E.2d 1173, 1177 (Ill. App. 2000) (dismissing an ICFA claim for failure to allege actual damages where "Plaintiff's complaint alleges only that the Y2K defect in the Medic [software] system may cause potential harm to his patients and to the patients of putative class members"). The court need not run this issue to ground, as dismissal can rest solely on the court's holding that Halperin's ICFA allegations of deception fail to satisfy Rule 9(b).

    **B.**    **Other State Law Consumer Fraud Claims**

Defendants primarily argue that Halperin lacks "standing" to raise claims under the nine state consumer protection laws other than Illinois's. Doc. 91 at 14-17. This challenge is more accurately characterized as an attack not on Halperin's Article III standing *per se*—for he has adequately alleged that he suffered an injury (loss of enjoyment of the use of his computer) that is fairly traceable to Defendants' software—but rather on his ability under Rule 23 to represent the multi-state class. As Halperin rightly notes, that question is best deferred to the class certification stage. *See Ortiz*, 527 U.S. at 831 (holding that because "class certification issues are … 'logically antecedent' to" the question of the putative class representative's standing, "the

issue about Rule 23 certification should be treated first"); *Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) ("We have begun our analysis with the question of class certification, mindful of the Supreme Court's directive to consider issues of class certification prior to issues of standing.") (citing *Ortiz*, 527 U.S. at 831); 1 *McLaughlin on Class Actions* § 4:28 & n.25 (11th ed. 2014) ("[M]ost courts have rejected standing challenges to named plaintiffs who plainly have standing as to their personal claims, but also purport to represent a class, for example, with claims under the consumer protection laws of states in which the named plaintiffs do not reside.") (collecting cases).

Nevertheless, because Halperin has not adequately pleaded a consumer fraud claim under Illinois law, *see* Section II.A, *supra*, he cannot represent either an Illinois class under the ICFA or a multi-state class under the other nine States' consumer fraud laws. *See Chavez v. Illinois State Police*, 251 F.3d 612, 630 (7th Cir. 2001) ("[I]f the court determines that the named plaintiffs' claims lack merit, such a decision 'ordinarily, though not invariably, … disqualifies the named plaintiffs as proper class representatives,' thus resolving the issue of class certification.") (ellipses in original); *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995) (same); *Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 526 (5th Cir. 2002) ("That none of Casas's claims survives appellate review also dooms the class certification."); *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000) ("With no meritorious claims, certification of those claims as a class action is moot."). Accordingly, the claims under the other States' laws are dismissed. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim …."); *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (holding that "a court may deny class

certification even before the plaintiff files a motion requesting certification," and that a court "need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination"). This disposition makes it unnecessary to reach Defendants' other arguments for striking the class claims. Doc. 93 at 14-19, 24-27.

### C. ICTA Claim

Broadly speaking, the ICTA "applies to unauthorized computer access." *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1236 (N.D. Ill. 2005). It provides in relevant part:

> (a) A person commits computer tampering when he or she knowingly and *without the authorization of a computer's owner or in excess of the authority granted to him or her*:
>
> …
>
> (4) Inserts or attempts to insert a program into a computer or computer program knowing or having reason to know that such program contains information or commands that will or may:
>
> > (A) damage or destroy that computer, or any other computer subsequently accessing or being accessed by that computer;
> >
> > (B) alter, delete, or remove a computer program or data from that computer, or any other computer program or data in a computer subsequently accessing or being accessed by that computer; or
> >
> > (C) cause loss to the users of that computer or the users of a computer which accesses or which is accessed by such program[.]

720 ILCS 5/17-51(a)(4) (emphasis added). The statute allows for an award of "reasonable attorney's fees and other litigation expenses" to the prevailing party in a civil lawsuit. 720 ILCS 5/17-51(c). Few courts have interpreted the ICTA or its predecessor, 720 ILCS 5/16D-3 (2006).

Halperin plausibly alleges that Defendants "insert[ed] a program," namely, *I Want This!*, "into a … computer program," namely, Halperin's web browsing program (*e.g.*, Internet Explorer, Firefox, Chrome, Safari, etc.), "knowing … that [*I Want This!*] contains … commands that will or may … alter … data from that computer," the data here being the contents of the html

file that *I Want This!* modifies before Halperin's web browser displays it on his screen. *See Soleto*, 384 F. Supp. 2d at 1236 (holding that an allegation that the defendant infected the plaintiff's computer with spyware states an ICTA claim); *cf. Farmers Ins. Exch. v. Auto Club Grp.*, 823 F. Supp. 2d 847, 859 (N.D. Ill. 2011) (holding that an allegation that the defendants accessed the plaintiff's electronic database without authorization and downloaded confidential information did not state an ICTA claim because it did not allege that the defendants "insert[ed] or attempt[ed] to insert a program" into the plaintiff's computer system). Thus, the only disputable element is whether Defendants installed *I Want This!* on Halperin's computer "without the authorization of the computer's owner or in excess of the authority granted to" them.

The amended complaint is vague on this point. Halperin's sole allegation appears in ¶ 35, where he asserts: "Defendants use *I Want This!* to intrude into [Halperin's] and the Class members' computers on a regular basis without [Halperin's] or the Class members' consent." Doc. 85 at ¶ 35. It is unclear whether by this Halperin means that he never consented to install *I Want This!* in the first place, or whether he consented to install it (for example by downloading it and agreeing to an End User License Agreement, or "EULA"), but that the program exceeds the EULA's scope.

This distinction matters. If Halperin is alleging that he never consented to install the program, then he has stated an individual claim for relief, because, on a Rule 12(b)(6) motion, the court must take him at his word. (Accordingly, the court disregards evidence submitted by Defendants that Halperin agreed to download *I Want This!* along with a "free" PDF program he downloaded on January 21, 2012, Doc. 93 at 8 (citing Doc. 58 at 11-15), though Halperin and his counsel should carefully review that evidence when deciding whether to file a second amended

complaint and, if so, what to allege.) But that allegation might doom his efforts to represent a class, because consent may be highly individualized, making class treatment potentially inappropriate under either Rule 23(a)(2)'s commonality requirement or, more obviously, Rule 23(b)(3)'s predominance requirement. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) ("If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question.") (internal quotation marks omitted); *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008) (holding that the district court abused its discretion in certifying a class where "there is no class-wide basis for distinguishing which recipients gave consent and which did not"); *Quesada v. Banc of Am. Inv. Servs., Inc.*, 2013 WL 623288, at *7 (N.D. Cal. Feb. 19, 2013) (holding that whether each class member consented to the defendant's recording their phone call was too individualized to satisfy commonality for class treatment).

By contrast, maybe by ¶ 35 Halperin means that he agreed to download and install *I Want This!*, but that the program exceeded its authorization, for example by violating the terms of the EULA. Or maybe he means that he agreed to install a *different* program (such as the PDF program) whose EULA did not adequately disclose that *I Want This!* would come along for the ride. Either of those theories of liability *might* be appropriate for class treatment, because, as Halperin points out, the software may operate similarly on every machine on which it's installed, and every class member may have acceded to the same or similar EULAs. Doc. 96 at 23-24; *see Harris v. comScore, Inc.*, 292 F.R.D. 579, 585 (N.D. Ill. 2013) ("Here, each Class member engaged in a substantively identical process to download OSSProxy …. The scope of the plaintiffs' consent here is determined by that identical process, the ULA, and the Downloading Statement, and is therefore common across the Class and Subclass, respectively."); *see also*

*Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action") (internal quotation marks omitted).

But if that's Halperin's allegation, then his amended complaint is deficient. Rule 8(a)'s purpose is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation and alteration marks omitted). Nowhere does the amended complaint describe what Halperin authorized *I Want This!* to do (*e.g.*, by attaching the EULA), or how the software exceeded that authorization (*e.g.*, by identifying the allegedly breached sections of the EULA). Without this basic information, Defendants have been given no notice, much less fair notice, of what Halperin alleges that they (or, more precisely, *I Want This!*) did wrong. *See Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) ("Bissessur's argument that the exact details of the contract will become clear during discovery runs counter to the holding of *Twombly*, which dictates that the complaint itself must contain sufficient factual detail to describe the parameters of the contract before discovery may commence."). And for the reasons given above, without a viable individual claim, Halperin's class claims also fail.

Given this uncertainty over what ¶ 35 is attempting to allege, Halperin's ICTA claim is dismissed without prejudice, and he will have one last chance to amend both the individual and class claims under that statute. Halperin should take care to articulate a sensible and plausible theory—consistent with the precomplaint investigation that counsel undoubtedly undertook, as well as with whatever Halperin now knows from the evidence adduced in discovery—of how *I Want This!* appeared on his computer, and how the software's presence or behavior exceeded the authority, if any, that he granted. If his theory is that any EULA he purportedly agreed to is an

unenforceable contract of adhesion, *see ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1451 (7th Cir. 1996); *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 377 (7th Cir. 1990); *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 655 (Ill. 2011); *see generally* Todd D. Rakoff, "Contracts of Adhesion: An Essay in Reconstruction," 96 *Harv. L. Rev.* 1173, 1190-97 (1983), then he should explicitly so allege, with "sufficient factual detail," *Bissessur*, 581 F.3d at 603.

## Conclusion

Defendants' motion to dismiss is granted. Because this is the first time the ICFA, multi-state consumer fraud, and ICTA claims have been considered on the merits—recall that the court relinquished supplemental jurisdiction over the original complaint's state law claims under 28 U.S.C. § 1367(c)(3) after dismissing its federal claims under Rule 12(b)(6)—the dismissal is without prejudice and with one final chance to replead by July 2, 2015. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024 (7th Cir. 2013). And because all of Halperin's claims have been dismissed, Defendants' motion to strike the amended complaint's class allegations is denied without prejudice as moot.

June 5, 2015

United States District Judge